# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **BRENDA K. BOBBITT,** )<br>    Plaintiff )<br> )<br>v. )<br> )<br> )<br> )<br>**JO ANNE B. BARNHART,** )<br> **Commissioner of Social Security,** )<br>    Defendant ) | Civil Action No. 1:06cv00056<br>**MEMORANDUM OPINION**<br><br><br>By:   PAMELA MEADE SARGENT<br>United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Brenda K. Bobbitt, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for supplemental security income, ("SSI"), and disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 and § 1381 *et seq.* (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Bobbitt protectively filed her applications for SSI and DIB on or about September 10, 2003, alleging disability as of October 18, 2002, based on knee and back pain and depression. (Record, ("R."), at 62, 63-65, 71, 542-47.) The claims were denied initially and on reconsideration. (R. at 30-34, 39, 41-46, 551-53.) Bobbitt then requested a hearing before an administrative law judge, ("ALJ"). (R. at 47.) The ALJ held a hearing on November 15, 2005, at which Bobbitt was represented by counsel. (R. at 570-606.)

By decision dated December 27, 2005, the ALJ denied Bobbitt's claims. (R. at 16-25.) The ALJ found that Bobbitt met the nondisability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 24.) The ALJ found that Bobbitt had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 24.) The ALJ found that the medical evidence established that Bobbitt had severe impairments, namely degenerative joint disease, post-traumatic stress disorder and affective disorder, but he found that Bobbitt's

-2-

impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.)  The ALJ also found that Bobbitt's allegations regarding her limitations were not totally credible. (R. at 24.)  The ALJ found that Bobbitt retained the residual functional capacity to perform light work[1] that did not require climbing ladders, exposure to heights or more than occasional stair climbing.  (R. at 24.) The ALJ also found that Bobbitt experienced occasional concentration deficits due to mental limitations.  (R. at 23-24.) Thus, the ALJ found that Bobbitt could perform her past relevant work as a companion/sitter, a short-order cook and a housekeeper.  (R. at 24.)  Therefore, the ALJ concluded that Bobbitt was not disabled under the Act at any time through the date of the ALJ's decision, and that she was not eligible for benefits. (R. at 24-25.)  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006).

After the ALJ issued his decision, Bobbitt pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 7-11.)  Bobbitt then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision.  *See* 20 C.F.R. §§ 404.981, 416.1481 (2006).   The case is before this court on the Commissioner's motion for summary judgment filed September 29, 2006.[2]

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2006).

[2]Bobbitt did not file a motion for summary judgment.

*II. Facts*

Bobbitt was born in 1957, (R. at 63, 573), which, at the time of the ALJ's decision, classified her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Bobbitt has an eighth-grade education and training as a certified nurse's assistant. (R. at 77, 575, 577.) Bobbitt has past work experience as a certified nurse's assistant, a housekeeper, a factory worker and a cook. (R. at 80, 101.) Bobbitt testified that she could stand for up to one hour without interruption, walk for up to half of a mile without interruption and sit for up to one hour without interruption. (R. at 583.)

Robert Jackson, a vocational expert, also was present and testified at Bobbitt's hearing. (R. at 599-605.) Jackson was asked to consider a hypothetical individual of Bobbitt's age, education and work history and who had the residual functional capacity to perform light work. (R. at 601.) Jackson testified that such an individual could perform work, as normally performed, as a short-order cook , a housekeeper and as a companion/sitter. (R. at 601.) Jackson stated that the job as a companion/sitter was essentially the same as a certified nurse's assistant. (R. at 601-02.) Jackson also testified that the individual could perform the above mentioned jobs with the limitations as set out in the assessments of Dr. Frank M. Johnson, M.D., a state agency physician, and R. J. Milan Jr., Ph.D., a state agency psychologist, and the notes from Mount Rogers Community Counseling Services. (R. at 398-405, 406-20, 476-88, 603-05.) Jackson stated that there would be no jobs available that an individual could perform who was limited as indicated by Belinda G. Overstreet, Ph.D., a licensed clinical psychologist. (R. at 489-97, 501-02, 604-05.)

In rendering his decision, the ALJ reviewed records from Carilion Medical Associates; Dr. Paul Liebrecht, M.D.; Physical Therapy Services; Williams Physical Therapy; Dr. Murray E. Joiner, Jr., M.D.; Dr. Frank M. Johnson, M.D., a state agency physician; R. J. Milan Jr., Ph.D., a state agency psychologist; Tri-Area Health Clinic; Mount Rogers Community Counseling Services; Belinda G. Overstreet, Ph.D., a licensed clinical psychologist; and Lucas Therapies, P.C. Bobbitt's attorney submitted records from Pamela S. Tessnear, Ph.D., to the Appeals Council.[3]

On July 9, 2002, Dr. Paul Liebrecht, M.D., saw Bobbitt for complaints of right knee pain resulting from an injury while working. (R. at 147.) An MRI of Bobbitt's right knee showed an equivocal peripheral tear of the medial meniscus posterior horn and sprain. (R. at 147, 153.) On July 10, 2002, Bobbitt underwent an arthroscopy of the right knee. (R. at 212-40, 328-29.) On July 25, 2002, Dr. Liebrecht placed Bobbitt on light-duty work for two weeks. (R. at 209.) On October 18, 2002, Dr. Leibrecht reported that he found Bobbitt's knee examination to be "quite benign." (R. at 345.) On November 7, 2002, an MRI of Bobbitt's lumbar spine showed right sided disc bulging at the L3-4 level, right sided disc protrusion at the L4-5 level and disc degeneration at the L2-3 and L3-4 levels. (R. at 142.) On February 22, 2003, Bobbitt had full range of motion of her right knee. (R. at 269.) Straight leg raising tests were negative and no muscle atrophy was noted. (R. at 269.) On April 10, 2003, Dr. Liebrecht reported that Bobbitt was able to return to full-duty work as a housekeeper. (R. at 318.)

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 7-11), the court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Case 1:06-cv-00056-PMS   Document 16   Filed 01/23/07   Page 5 of 14   Pageid#: 65

The record shows that Bobbitt was treated at the Tri-Area Health Clinic from 2003 through 2005 for various complaints including back pain, depression and hypertension. (R. at 421-37, 472-75, 504-11.) On April 14, 2003, Bobbitt reported that her nerves were some better since taking medication. (R. at 431.) On May 29, 2003, it was noted that Bobbitt's hypertension was under control. (R. at 429.) On September 5, 2003, Bobbitt reported that her mother had emotionally abused her all of her life. (R. at 428.) She reported that she had become afraid to leave her home. (R. at 428.) She reported that she had developed attacks of "smothering" and severe nervousness. (R. at 428.) Dr. Steven R. Huff, M.D., reported that Bobbitt was mentally stable. (R. at 428.) Dr. Huff diagnosed depression, anxiety and panic disorder. (R. at 428.) On April 14, 2005, Bobbitt reported that she had been fishing every day. (R. at 508.) She reported that she felt better, and her mood was reported to be better. (R. at 508.)

On January 14, 2003, Dr. Murray E. Joiner Jr., M.D., saw Bobbitt for complaints of right knee pain and back pain. (R. at 281-85.) Bobbitt had full range of motion of the right knee. (R. at 284.) Examination of Bobbitt's spine revealed diffuse paraspinal tenderness with minimal increased tone and right SI joint tenderness with reflex lumbar and gluteal spasms. (R. at 284.) Bobbitt requested a note for her daughter to remain home from college to care for her. (R. at 285.) Dr. Joiner reported that he was concerned that Bobbitt's daughter was "facilitating chronic, needless pain behaviors" in Bobbitt. (R. at 285.) On March 20, 2003, a functional capacity evaluation revealed that Bobbitt had the residual functional capacity to perform light work that did not require repetitive bending, full kneeling or squatting. (R. at 296-315.) On April 15, 2003, Dr. Joiner released Bobbitt to return to unrestricted work as

a housekeeper. (R. at 316.) On June 2, 2003, Bobbitt reported that she was terminated from her job in December 2002 due to a "reduction in force." (R. at 354.) On July 11, 2003, a functional capacity evaluation revealed that Bobbitt had the residual functional capacity to perform light work. (R. at 368-73.)

On April 14, 2004, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Bobbitt had the residual functional capacity to perform light work. (R. at 398-405.) Dr. Johnson indicated that Bobbitt could occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds. (R. at 401.) He indicated that Bobbitt could occasionally balance, stoop, kneel, crouch and crawl. (R. at 401.) No manipulative, visual or communicative limitations were noted. (R. at 401-02.) Dr. Johnson indicated that Bobbitt should avoid all exposure to working hazards. (R. at 403.) This assessment was affirmed by Dr. Michael J. Hartman, M.D., another state agency physician, on June 18, 2004. (R. at 405.)

On April 15, 2004, R. J. Milan Jr., Ph.D., a state agency psychologist, indicated that Bobbitt suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 406-20.) Milan indicated that Bobbitt had mild limitations in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 416.) He indicated that there was no evidence that Bobbitt suffered from any episodes of decompensation. (R. at 416.) This assessment was affirmed by Hugh Tenison, Ph.D., another state agency psychologist, on June 18, 2004. (R. at 406.)

The record shows that Bobbitt was treated at Mount Rogers Community

Counseling Services, ("Mount Rogers"). (R. at 438-50, 476-88, 498-500.) On September 1, 2004, Bobbitt was diagnosed with post-traumatic stress disorder. (R. at 438-44.) It was assessed that Bobbitt had a then-current Global Assessment of Functioning, ("GAF"), score of 45.[4] (R. at 444.) On October 8, 2004, Dr. Bobby Miglani, M.D., saw Bobbitt for her complaints of anxiety and nightmares. (R. at 446-48.) Bobbitt reported childhood verbal, emotional and sexual abuse by her stepfather. (R. at 446.) Dr. Miglani diagnosed post-traumatic stress disorder and depressive disorder, not otherwise specified. (R. at 448.) Dr. Miglani assessed a GAF score of 50. (R. at 448.) On January 14, 2005, Dr. Miglani diagnosed major depression and post-traumatic stress disorder. (R. at 484.) On April 5, 2005, Bobbitt's affect was sad and her mood was anxious. (R. at 478.) On May 12, 2005, Bobbitt's affect and mood were unremarkable. (R. at 476.) Bobbitt reported that she was feeling much better. (R. at 476.) On August 12, 2005, Bobbitt was described as irritable and anxious. (R. at 498.)

On August 11, 2005, Belinda G. Overstreet, Ph.D., a licensed clinical psychologist, evaluated Bobbitt at the request of Bobbitt's attorney. (R. at 489-97.) Overstreet diagnosed generalized anxiety disorder overlaid by post-traumatic stress disorder, chronic dysthymia, panic disorder with emerging agoraphobia and avoidant personality disorder. (R. at 496.) Overstreet assessed Bobbitt's GAF score at 45. (R. at 496.)

---

[4]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

Overstreet completed a mental assessment on September 26, 2005, indicating that Bobbitt had a more than satisfactory ability to follow work rules, to use judgment in nonsocial situations, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 501-02.) Overstreet indicated that Bobbitt had a seriously limited, but not precluded, ability to use judgment in social situations, to interact with supervisors, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 501-02.) She also indicated that Bobbitt had no useful ability to relate to co-workers, to deal with the public and to relate predictably in social situations. (R. at 501-02.)

On January 30, 2006, Pamela S. Tessnear, Ph.D., a licensed clinical psychologist, evaluated Bobbitt at the request of Bobbitt's attorney. (R. at 558-67.) Tessnear diagnosed post-traumatic stress disorder, anxiety disorder, not otherwise specified, dysthymic disorder and personality disorder, not otherwise specified. (R. at 566.) Tessnear placed Bobbitt's GAF score at 48. (R. at 566.)

Tessnear completed a mental assessment indicating that Bobbitt had a more than satisfactory ability to follow work rules. (R. at 568-69.) She indicated that Bobbitt had a limited, but satisfactory, ability to use judgment, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 568-69.) Tessnear indicated that Bobbitt was seriously limited, but not precluded, in her ability to relate to co-workers, to interact with supervisors, to function independently, to understand, remember and carry out detailed instructions,

-9-

to behave in an emotionally stable manner and to demonstrate reliability. (R. at 568-69.) She also indicated that Bobbitt had no useful ability to deal with the public, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex instructions and to relate predictably in social situations. (R. at 568-69.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in

the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated December 27, 2005, the ALJ denied Bobbitt's claims. (R. at 16-25.) The ALJ found that the medical evidence established that Bobbitt had severe impairments, namely degenerative joint disease, post-traumatic stress disorder and affective disorder, but he found that Bobbitt's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) The ALJ found that Bobbitt retained the residual functional capacity to perform light work that did not require climbing ladders, exposure to heights or more than occasional stair climbing. (R. at 24.) The ALJ also found that Bobbitt experienced occasional concentration deficits due to mental limitations. (R. at 23-24.) Thus, the ALJ found that Bobbitt could perform her past relevant work as a companion/sitter, a short-order cook and a housekeeper. (R. at 24.) Therefore, the ALJ concluded that Bobbitt was not disabled under the Act at any time through the date of the ALJ's decision, and that she was not eligible for benefits. (R. at 24-25.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006).

Bobbitt argues that the ALJ erred by relying on the assessments of the state agency psychologist rather than the opinions of Overstreet and the counselors at Mount Rogers. (Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 11-12.) Bobbitt also argues that the ALJ erred by finding that she had the residual functional capacity to perform work as a companion/sitter, a short-order cook and a housekeeper. (Plaintiff's Brief at 13-14.)

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ in this case found that Bobbitt had the residual functional capacity to perform light work that did not require climbing ladders, exposure to heights or more than occasional stair climbing. (R. at 24.) The ALJ also found that Bobbitt experienced occasional concentration deficits due to mental limitations. (R. at 23-24.) Based on my review of the record, I do not find that substantial evidence supports this

finding. The ALJ noted that "the record establishes mental impairments which satisfy diagnostic listing criteria for post-traumatic stress and affective disorders and result in mild functional limitations impacting activities of daily living; moderate limitations upon social functioning; and concentration, persistence, and pace...." (R. at 20.) The ALJ later noted that Bobbitt experienced "occasional concentration deficits due to mental limitations." (R. at 23.)

While the ALJ rejected Overstreet's assessment because he found that it was inconsistent with the treatment notes of record, I do not agree with this finding. While it is true that the state agency psychologist found that Bobbitt suffered from a nonsevere affective disorder and anxiety-related disorder and placed only mild limitations on her abilities, he did not have the records from Mount Rogers or Overstreet to review prior to making his determination. (R. at 406-20.) In addition, when Bobbitt was evaluated by psychologist Tessnear in 2006, she placed various limitations on Bobbitt's work-related abilities similar to those placed on her by Overstreet. (R. at 501-02, 558-69.) Furthermore, the hypothetical presented to the vocational expert suggested that Bobbitt had only mild limitations in her ability to concentrate. (R. at 603.) The ALJ found that Bobbitt had moderate limitations upon social functioning and concentration, persistence and pace, therefore, I cannot find that substantial evidence exists to support the ALJ's finding with regard to Bobbitt's residual functional capacity. (R. at 20, 23.)

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment

will be denied, the Commissioner's decision denying benefits will be vacated and this case will be remanded to the Commissioner for further development.

An appropriate order will be entered.

DATED: This 23rd day of January 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE